# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TIMOTHY KEVIN McGRUDER,** : | |
| Petitioner : | |
| : | CIVIL ACTION NO. 3:16-0280 |
| v. : | |
| : | (Judge Mannion) |
| **C. MAIORANA** : | |
| Respondent : | |

## MEMORANDUM

Timothy Kevin McGruder, an inmate formerly confined in the Canaan United States Penitentiary, Waymart, Pennsylvania (USP-Canaan)[1] filed the above captioned petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2241. (Doc. 1, petition). He challenges Incident Report No. 274627, charging him with Fighting. (Doc. 7-2 at 6, Incident Report). Specifically, McGruder claims that his "due process was violated and as a result [he] was sanctioned a disallowance of 27 days good time conduct which violated [his] liberty." (Doc. 1, petition). Additionally, he states that he "was never apprised of an investigation" and "never received an incident report nor administrative detention order." Id.

The petition is ripe for disposition and, for the reasons that follow, will

---

[1]Petitioner is currently housed in Lee United States Penitentiary, Jonesville, Virginia.

be denied.

I. **Background**

On August 5, 2015 at approximately 7:30 p.m., Lieutenant T. Galella delivered Incident Report No. 2746267 to McGruder. (Doc. 7-2 at 6, Incident Report). The incident report reads as follows:

> On August 5, 2015, an SIS investigation was completed. This investigation determined that on June 15, 2015, at approximately 9:23 a.m., inmate [redacted] fought with inmates [redacted], and McGruder, Timothy, #10273-041, in the common area of Unit B-2.
>
> This conclusion is supported by the statements of staff who observed inmates [redacted], McGruder and [redacted] strike each other with closed fist punches, reviews of video surveillance recordings from Unit B-2 cameras made on June 15, 2015, which revealed that inmate [redacted] and [redacted] struck inmate [redacted] with closed fist punches and that inmate [redacted] struck inmate [redacted] with a broomstick during this incident. This review of video surveillance recordings also showed inmate [redacted] strike both inmates [redacted] and [redacted] with closed fist punches during this incident. While the incident was in progress, inmate McGruder ran directly towards inmates [redacted] and [redacted] and attempted to strike inmate [redacted] with a closed fist to the head.
>
> Additionally, medical assessments conducted reflect that all four inmates involved in this incident received injuries as a result of this incident and that inmate [redacted] injuries required treatment at an outside hospital. Interviews conducted with inmates [redacted], [redacted], and [redacted] where they admitted to striking each other with closed fists.

2

Id. On August 6, 2015, Petitioner appeared before the Unit Discipline Committee ("UDC"). (See Id., Committee Action). It was noted that Petitioner "displayed a poor attitude" and initially made the following statement: "NO STATEMENT", before stating that he "was trying to break it up." Id. Due to the seriousness of the alleged act, the UDC referred the charge to the Discipline Hearing Officer ("DHO"), as it warranted higher sanctions than could be given at the UDC level. Id. The UDC recommended "that the DHO sanction appropriately if found to have committed the alleged prohibited act." Id. During the UDC hearing, Counselor, J. Durkin, informed McGruder of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Id. at 15, Inmate Rights at Discipline Hearing). Petitioner, however, refused to sign the form. Id.

Also on August 6, 2015, McGruder was provided with a "Notice of Discipline Hearing before the (DHO)" form. (Id. at 14). McGruder did not request any witnesses, or to be represented by a staff member. Id. He also refused to sign this form. Id.

On August 10, 2015, Petitioner appeared for a hearing before DHO, Marc A. Renda. (Doc. 7-2 at 9-13, DHO Report). At the onset of the hearing, "inmate MCGRUDER was advised of his rights before the DHO and indicated

3

he understood them (waiving staff representation and waiving witness testimony). McGruder elected to make the following statement on his behalf before the DHO: "It was a push. I said what are you doing. I said chill." Id. McGruder further stated: "Dudes was on the ground. I couldn't punch nobody. I tried to break it up." Id. No procedural issues were raised nor was documentary evidence presented for consideration by the DHO. Id.

In addition to the Incident Report and Investigation, the DHO considered the following documentary evidence: (1) Memoranda of L. Pambianco, Senior Officer, dated July 25, 2015; (2) Memoranda of P. Granville, Lieutenant, dated June 15, 2015; (3) Bureau of Prisons Health Services Clinical Encounter dated June 15, 2015, regarding [redacted]; (4) Six (6) photographs depicting [redacted]; (5) Three (3) photographs depicting [redacted]; (6) Bureau of Prisons Health Services Clinical Encounter - Administrative Note dated June 15, 2015, regarding MCGRUDER, TIMOTHY KEVIN 10273-041; (7) Six (6) photographs depicting MCGRUDER, TIMOTHY KEVIN 10273-041; (8) Bureau of Health Services Clinical Encounter dated June 15, 2015, regarding [redacted]; (9) Four (4) photographs depicting [redacted]; and (10) Inmate Investigative Report (CAA-15-0447) dated July 30, 2015. (Id. at 11). After considering the weight of all the documentary evidence, the DHO afforded

4

little weight to Petitioner's plea the "it was a push" and that he "tried to break it up." Id. The DHO concluded, based on the greater weight of the evidence that Petitioner committed the prohibited act of Fighting with Another Person-Attempted/Aiding, a code 201A violation. Id.

The DHO sanctioned McGruder to thirty (30) days disciplinary segregation; loss of twenty seven (27) days Good Conduct Time; one month impound property (excluding religious and legal material); one year loss of telephone, commissary, and TRULINCS privileges. The DHO documented his reasons for the sanctions given as follows:

> The action/behavior on the part of any inmate to become involved in a fight with any other inmate or person poses a threat to the health, safety and welfare of not only himself, but all other inmates and staff within the institution. In the past, fights between two individuals have expanded to include others which created a larger problem for staff to resolve. Behavior of this nature grossly deviates from that of a law-abiding person, deviates from that of societal norms, as well as deviates from that of institution rule. The number of inmates involved in the melee exacerbates the egregiousness of his actions.
>
> The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his behavior. The DHO will note for the record this inmate presents extensive disciplinary history to include prior infractions for possession of dangerous weapons, possession of drugs/alcohol, fighting, refusing to obey orders of staff, as well as demonstrates a continued inability to abide by institution rule. Chronic misconduct and engaging in recurring acts of violence is corrosive towards correctional objectives. Not only does this behavior

undermine the security and orderly running of correctional institutions, but is also contrary to the foundation of good citizenship. Progressive discipline has failed to deter this inmate from engaging in wrongful, prohibited, and illegal conduct.

Disciplinary segregation and disallowance of good conduct time is imposed to demonstrate the seriousness of his actions and as punishment for his conduct. The losses of commissary, telephone, and TRULINCS privileges, as well as impounding of property, was imposed to deter further behavior. It is hoped that these sanctions prompt MCGRUDER to modify his behavior and deter others from engaging in such activities in the future.

Id. McGruder was advised of his appeal rights at the conclusion of the hearing. Id. At the conclusion of the hearing, the DHO supplemented the record with the following:

> The hearing officer will memorialize in the record that after meting [out] the decision and while MCGRUDER was being escorted back to his cell, he thundered he did not receive a copy of the incident report. When the hearing officer posed his reasoning for not raising this during the preliminary phase of the hearing, MCGRUDER oppugned he did raise such an objection. MCGRUDER then charged the hearing officer was in violation of agency policy and protocol, and accused him of violation his "rights".
>
> The hearing officer is well-versed with agency policy, protocol, nor is he oblivious to the panoplies of due process. The DHO recognizes that chief among due process minima is an inmates right to written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing. Here the record reflects he was provided notice of the charge on August 5, 2015 at 7:30 PM by T. Galella, Lt. "*In contra*" to MCGRUDER's claim, he raised this issue only after a finding was rendered in the case and upon being escorted back to his cell in the Special Housing Unit [or

6

> "SHU"]. Bluntly, this [is] completely disingenuous and guileful. The DHO perceives this as a dilatory stratagem to avoid the pains, penalties and consequences for engaging in wrongful and prohibited conduct, and the decision will stand as adjudicated.

(Doc. 7-2 at 10, Discipline Hearing Officer Report).

## II. Discussion

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance

written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons has enacted specific procedures for disciplinary proceedings. 28 C.F.R. §541.1, et seq. Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. 28 C.F.R. §541.5(a). The incident report ordinarily must be issued within 24 hours of the time the staff member became aware of the prisoner's involvement in the incident. Id. The incident is then investigated. Id.

at §541.5(b).

After the incident is investigated, the UDC reviews the incident report and takes one of the following actions: 1) finds that the prisoner committed the prohibited act charged and/or a similar prohibited act as reflected in the incident report; 2) finds that the prisoner did not commit the prohibited act charged; or 3) refers the incident report to the DHO for further review. Id. at §541.7(a). Prohibited acts are separated into four categories based on severity: Greatest, High, Moderate, and Low. Id. at §541.3(a). If a prisoner is charged with a prohibited act in the Greatest or High category, the UDC automatically refers the incident report to the DHO for further review. Id. at §541.7(a)(4).

Under the regulations, when an incident report is referred to the DHO, a disciplinary hearing is conducted in accordance with the procedures set forth at 28 C.F.R. §541.8. The prisoner is entitled to notice of the charges at least 24 hours before the hearing. Id. at §541.8(c). The prisoner is entitled to appear at the hearing and is entitled to staff representation at the hearing. Id. at §541.8(d) & (e). The prisoner is entitled to make a statement and to present documentary evidence. Id. at §541.8(f). A prisoner may request to have witnesses appear at the hearing on his behalf, but the DHO may refuse to call

9

requested witnesses if they are not reasonably available, if their presence would jeopardize institutional security, or if they would present repetitive evidence. Id. The DHO considers all evidence presented at the hearing. Id. The decision of the DHO must be based on at least some facts and, if there is conflicting evidence, the decision must be based on the greater weight of the evidence. Id. Following the hearing, the DHO must provide a written report documenting that the prisoner was advised of his rights. Id. at §541.8(h). The report must document the evidence relied upon by the DHO, the findings of the DHO, the sanctions imposed by the DHO, and the reasons of the DHO for imposing those sanctions. Id.

In the instant case it is clear from the record that McGruder was afforded all of the required procedural rights set forth in Wolff. Although he makes the conclusory statement that he did not receive a copy of the incident report, the record is devoid of any evidence to corroborate his allegation. To the extent that Petitioner argues that 28 C.F.R. §541.5(a) was violated because he was not served with the incident report within 24 hours of staff becoming aware of the incident, 28 C.F.R. §541.5(a) provides that "[t]he discipline process starts when staff witness or reasonably believe" that an inmate has committed a prohibited act and that an incident report will be

10

delivered to the inmate "ordinarily" within 24 hours of staff becoming aware of the inmate's involvement. The Court finds that the use the word "ordinarily" clearly allows for situations where an inmate may not receive the incident report within 24 hours. See Scott v. Martinez, 2009 WL 790143, slip op. at *3 (M.D. Pa. Mar. 20, 2009 (Kane, C.J.) ("use of the word 'ordinarily' clearly provides the BOP with some discretion"). Even if this regulation was violated, McGruder cannot show that his right to due process was violated at his hearing, especially where Wolff does not require issuance of the charge within 24 hours of the incident. Wolff only requires that an inmate receive written notice of the charges 24 hours before a hearing. Here, record evidence clearly demonstrates that McGruder was timely served with the incident report on August 5, 2017, which was well within the prescribed 24 hour period prior to the disciplinary hearing held on August 10, 2015. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. McGruder declined to call witness or selected a staff representative

 Petitioner was then afforded an opportunity to make a statement, which was documented in the DHO's report. He then received a written decision

setting forth the evidence relied upon by the DHO and the rationale behind the decision, and was notified of his right to appeal.

Since McGruder was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. To the extent McGruder would allege there was not enough evidence to find he had committed the prohibited act, the decision of the DHO is entitled to considerable deference by a reviewing court and the decision should be upheld if there is "some evidence" to support the decision. In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court held that the "some evidence" standard applies in addressing a state prisoner's due process claim. Id. at 456-57; see Thompson v. Owens, 889 F.2d 500, 501- 02 (3d Cir. 1989).

The United States Court of Appeals for the Third Circuit observed that the standard found in 28 C.F.R. §541.17(f) (1986) was more stringent than the "some evidence" standard. Henderson v. Carlson, 812 F.2d 874, 879 (3d Cir. 1987). The Court concluded that the "substantial evidence" standard in §541.17(f) (1986) was "clearly higher than any standard that the Constitution imposes on prison disciplinary proceedings." Id. In 2007, §541.17(f) was amended and no longer includes the "substantial evidence" standard. 28

C.F.R. §541.17(f) (2007). Section 541.17(f) (2007) now requires that a DHO's decision be based on "some facts" and, if there is conflicting evidence, the decision is based on "the greater weight of the evidence." Id.

A DHO need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts. Rather, under Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. A disciplinary committee's resolution of factual disputes should not subject to review where the standard in Hill is satisfied. Id.

In this case, the record clearly reveals the existence of both testimony offered and documentary evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. In addition to the statement provided by Petitioner, the DHO also considered the investigative report, staff memoranda, photographs, medical and investigative reports. In accordance with Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. In this instance, there is "some evidence" to support the decision of the DHO.

Finally, the Court finds that all sanctions imposed by the DHO were

within the limits of 28 C.F.R. §541.3. Petitioner was found guilty of two 200-level, high severity level prohibited acts. Pursuant to 28 C.F.R. §541.3, the following are the sanctions available for 200-level offenses:

A. Recommend parole date rescission or retardation.
B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50%, or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1. Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C. Disciplinary segregation (up to 6 months)
D. Make monetary restitution.
E. Monetary fine.
F. Loss of privileges (e.g. visiting, telephone, commissary, movies, recreation).
G. Change housing (quarters).
H. Remove from program and/or group activity.
I. Loss of job
J. Impound inmate's personal property.
K. Confiscate contraband.
L. Restrict to quarters.
M. Extra duty.

Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied.

### III. Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. §2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a §2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264–65 (3d Cir. 2000)(en banc) (certificate of appealability not required to appeal from denial of §2241 petition), *abrogated on other grounds by* Gonzalez v. Thaler, ––– U.S. ––––, ––––, 132 S.Ct. 641, 649, 181 L.Ed.2d 619 (2012); Kornegay v. Ebbert, 502 Fed.Appx. 131, 133 (3d Cir. 2012). Thus, the Court need not address this issue in the current action.

### IV. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus will be **DENIED**. A separate Order will be issued.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION
United States District Judge**

**Dated: February 5, 2018**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-0280-01.wpd